**Alejos Orona GUANA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0983103CR.**

Court of Appeals of Texas, Beaumont.

Jan. 11, 1984.

Bennie E. Ray, Austin, for appellant.

Ronald Earle, Dist. Atty., Austin, for appellee.

## OPINION

DIES, Chief Justice.

Appellant was indicted by a grand jury of Travis County of aggravated kidnapping in November, 1980. A jury found him guilty, and assessed his punishment at fifteen years confinement in the Texas Department of Corrections. Judgment was entered on April 13, 1981. Appellant perfected appeal to the Texas Court of Criminal Appeals. That court, by order dated September 1, 1982, pursuant to the provisions of Senate Bill 265, 67th Legislature, Regular Session, 1981, transferred the appeal to the Court of Appeals, Third, Supreme Judicial District in Austin. The Supreme Court of Texas, by order entered May 4, 1983, transferred the appeal to this court.

Appellant's first ground of error complains that "there was wholly an insufficiency of evidence to sustain a conviction for aggravated kidnapping in that no intent to abuse or sexually assault the complainant was proved."

The degree of evidence required to support a conviction has not, we think, been any better explained than in *O'Mary v. State*, 139 Tex.Cr.R. 294, 139 S.W.2d 800, 802 (1940), quoting from Branch's Ann.Texas Penal Code, Sec. 1877:

> " 'To sustain a conviction it should appear not only that an offense as charged has been committed, but there should also be proof to a degree of certainty greater than a mere probability or strong suspicion tending to establish that the party charged was the person who committed it or was a participant in its commission. There must be legal and competent evidence pertinently identifying the defendant with the transaction constituting the offense charged against him.' "

Janet Schoener was in the Dodge City Steak House on the evening of October 18, 1980. She left with her husband about midnight and saw several men fighting. A girl was screaming. "One guy was laying in the parking lot. Someone pushed the girl in the back seat of the car, and they drove off." She heard the girl screaming, "No." It was the witness's impression the girl was resisting.

Julian Pando (speaking through an interpreter) was with appellant and several others on the evening in question. They were drinking at an unfamiliar place until "about midnight." They saw Donna, the victim, and appellant talked to her and invited her to go with him. The four companions got into appellant's car. In about fifteen minutes Donna came out of the bar "accompanied by the man that was with her." The man and Donna got into appellant's car. When appellant failed to turn at a specific place, as requested by Donna or her companion, the companion hit appellant "on the eye with a beer bottle." They stopped the car and subdued the companion. Donna left the car, but appellant went after her, and brought her back "... [H]e [appellant] had ahold of her." Then they left the parking lot, with the witness driving. Later appellant again took the wheel and drove to a "desolate road," and then [appel-

lant] said "we could have sex with the woman," which they all did. They went back in the city and let Donna out. Prior to the sex, appellant had told Donna she was going to pay for the lick over his eye.

Donna testified she left the bar with "Junior," they accepted a ride in appellant's car, but the latter would not stop when "Junior" requested. "Junior" got into a scuffle with the others. The car stopped, and they all got out, including Donna, who tried to get away. She was grabbed at the driver's command and pushed back into the car. She was told to shut up; the driver told her, "And you, you're going to get it." He said that "I was going to pay for what Junior done to him." They drove to a lonely place and she was told to undress. She thought she saw a knife blade. She undressed and then the men "just took turns," each twice. She heard one of them exclaim, "Get the gun." They then drove her to the "Dessau dance hall," and she made it home. Later she was taken to Brackenridge Hospital. She later identified the men from photographs.

■ TEX.PENAL CODE ANN. § 20.04 (Vernon 1974) defines Aggravated Kidnapping thusly:

"(a) A person commits an offense if he intentionally abducts another person with the intent to:

\* \* \* \* \* \*

(4) inflict bodily injury on him or violate or abuse him sexually...."

We hold the evidence is sufficient to sustain a conviction under this statute, and thus overrule ground of error number one.

■ Ground of error two states: "The indictment in cause number 61,595 [the instant case] is fatally defective in that it alleges that appellant had the intent 'to violate and abuse the complainant sexually,' terms which are too general and vague and do not properly apprise the appellant of the acts relied upon by the State to constitute the criminal offense such as to

enable the appellant to properly prepare his defense thereto."

In *Phillips v. State*, 597 S.W.2d 929, 935 (Tex.Crim.App.1980), we find:

"By original and supplemental motions to quash, appellant timely complained that the requisite facts were not alleged to show the basis of appellant's alleged 'intent to violate and abuse' the complainants 'sexually.' We hold that there was no reversible error in the trial court's overruling of these motions. The information requested was essentially evidentiary, rather than being required for purposes of notice and plea in bar. Unless a fact is essential for notice to the defendant, the indictment need not plead the evidence relied on by the State." (quoting authorities)

This ground of error is overruled.

■ Ground of error three states: "Alternatively, if the indictment in cause number 61,595 [the instant case] does sufficiently allege the offense of aggravated kidnapping, the indictment itself is fatally defective as it charges both the criminal offenses for kidnapping and aggravated kidnapping in one paragraph, in violation of Article 21.24, C.C.P."

On the authority of *Phillips v. State, supra*, we overrule this ground of error.[1]

■ Ground of error four follows: "The indictment in cause number 61,595 [the instant case] is fatally defective as it does not specifically and properly allege a constituent element of the offense of sexual abuse as defined by Section 21.04, P.C."

TEX.PENAL CODE ANN. § 21.04(a) (Vernon 1974) *and § 21.04(b)* (Vernon Supp.1982–1983) set out the instances of sexual abuse. The same attack on the indictment was made in *Phillips v. State, supra* at 935, and the Court pointed out that "[u]nless a fact is essential for notice to the defendant, the indictment need not plead the evidence relied on by the State." This ground of error is overruled.

1. The Court there stated the form used, which is similar to the indictment in the instant case, was not the preferred one, but found no reversible error.

The judgment of the trial court is affirmed.

Affirmed.